| | |
|---|---|
| **MICHAEL C. WORSHAM**<br>1916 Cosner Road<br>Forest Hill, Maryland 21050 | *   UNITED STATES DISTRICT COURT<br>*   FOR THE DISTRICT OF MARYLAND |
| Plaintiff | * |
| v. | *   Case #: |
| **TRAVEL OPTIONS, INC.**<br>5301 N. Federal Highway 275<br>Boca Raton, Florida 33487 | *<br>*   CCB14CV2749 |
| **CLIFFORD SHANNON**<br>5301 N. Federal Highway 275<br>Boca Raton, Florida 33487 | *<br>* |
| Defendants | * |

\* * * * * * * * * * * * *

## COMPLAINT

The Plaintiff, Michael C. Worsham, sues the Defendants for federal and Maryland TCPA telemarketing violations, and in support thereof alleges that:

### PARTIES

1. Plaintiff Michael C. Worsham resides in Harford County, Maryland, and has continuously subscribed to and used his phone number 410-557-6192, which has been on the National Do Not Call list over 8 years since July 15, 2006, and is a Verizon Wireless cell phone number.

2. Defendant **TRAVEL OPTIONS, INC** is a Florida for-profit corporation incorporated in October 2010 with an address of 5301 N. Federal Highway 275, Boca Raton, FL 33487.

3. Defendant **CLIFFORD SHANNON** is an individual who lives in Florida, and who has been President and registered agent for Travel Options, Inc. at all times relevant to this suit.

### JURISDICTION

4. The Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S. Code § 227(b)(3), provides for a private right of action in state or federal court for violations of the TCPA and for violations of the regulations promulgated pursuant to the TCPA by the Federal Communications Commission (FCC) at 47 C.F.R. Part 64, Subpart 1200.

### ALLEGATIONS

#### Defendants' scam calls about timeshare credits

5. Defendants, individually and in concert with others, and through the mutual assistance of one another and others, engaged in a conspiracy to call consumers, including at phone

## ALLEGATIONS
### Defendants' scam calls about timeshare credits

5. Defendants, individually and in concert with others, and through the mutual assistance of one another and others, engaged in a conspiracy to call consumers, including at phone numbers that are on the National Do Not Call (DNC) list registry, using an automatic telephone dialing system (ATDS), claiming they are calling because the consumer has a $750 unused travel credit from supposedly attending a timeshare presentation in the past.

6. Defendants used an ATDS to call Plaintiff's number, using a predictive dialer, which does not always leave any message at all or identifying information with the recipient.

7. During Defendants' telemarketing calls, their sales persons offers a travel package, which includes a Florida part, a Las Vegas part, and a cruise, allegedly worth over $4,000, for which the consumer's $750 credit can be applied, and after which the consumer will have to pay "only" $697, and will also have to sit through a 90 minute times share presentation.

8. Defendants' assertion about a $750 credit and the consumer having attended a timeshare presentation, is a false pretext to initiate and deliver telemarketing solicitation calls.

### Defendants 4 calls to Plaintiff's wireless cell phone number in July 2014

9. Defendants initiated and conspired to initiate at least 4 telephone solicitation calls using an automatic telephone dialing system (ATDS) each time to call Plaintiff's cell phone number 410-557-6192 as part of the scam, on the dates below:

| Date of Call | Time of Call | Caller ID | Message |
|---|---|---|---|
| 1. July 16, 2014 | 3:03 PM | 954-656-4091  Florida | None |
| 2. July 17, 2014 | 10:23 AM | 954-656-4091  Florida | None |
| 3. July 17, 2014 | 2:44 PM | 954-656-4091  Florida | None |
| 4. July 18, 2014 | 2:28 PM | 954-656-4091  Florida | see below |

10. Defendants did not leave any message during its first 3 calls made on July 16 and 17, 2014.

11. Plaintiff answered Defendants fourth call on July 18, 2014 at 2:28 PM, and a man said he was Jim Allison with Travel Options. "Jim" said Plaintiff had an unused travel credit of $750 from attending a timeshare presentation 2-4 years ago in Florida or Las Vegas, and described a travel package that Plaintiff could use it for, which included a Florida part, a Las Vegas part, and a cruise, which he said was worth over $4,000, but that the cost would be "only" $697 after applying the $750 credit, and that Plaintiff also had to participate in a 90 minute timeshare presentation, and that the travel package was basically a tax write-off for the timeshare companies, and a way to keep rooms occupied that would otherwise be empty.

12. Plaintiff asked but "Jim" could not identify who or what company the $750 credit was related to, only that it was from something Plaintiff did in the last couple years in FL or Las Vegas.

13. Plaintiff has not attended any timeshare presentation in the last 2 to 4 years in either Florida or Las Vegas, or anywhere else.

14. Plaintiff's 410-557-6192 number has been on the National DNC list registry continuously since July 15, 2006 and at the time of all of the calls.

15. Defendants' Call #4 annoyed Plaintiff at his home, and during which Plaintiff received a separate call from his doctor on a separate phone line of Plaintiff's.

## ADDITIONAL ALLEGATIONS

16. Clifford Shannon exercised decision-making control over Travel Option's policies, procedures and business practices, and made the decisions causing the calls and violations.

17. Defendants conspired to called Plaintiff's number despite it being on the national DNC list.

18. Defendants conspired to called Plaintiff's number and to intentionally not leave a message.

19. The purpose of Defendants' scam conspiracy and of these calls was to encourage the purchase or rental of, or investment in, property, goods, or services offered by Defendants.

20. Defendants' calls 1-3 all failed to transmit or include the actual name of the caller.

21. Defendants' calls 1-4 failed to transmit or include Defendants' phone number.

22. The name of the telemarketer is available for Caller ID transmission by Defendants' carrier.

23. Plaintiff's Caller ID equipment can and regularly does transmit the name of the caller, and the telemarketer's carrier is capable of transmitting the name of the telemarketer or caller.

24. Plaintiff has no business relationship of any kind with, and never gave any prior permission to be called by any Defendant or their affiliates, agents, contractors or partners.

25. Plaintiff may have also received calls on other dates as well from Defendants or agents or contractor as part of Defendants' conspiracy and over which Defendants exercises control, and using different Caller IDs and prerecorded messages, but can not be certain because Defendants may have hide who they are, by using fake or incomplete Caller ID, fake names in the messages, failing to identify themselves in the messages, failing to include a phone number in the messages, and failing to even tell their own employees who answer the phone who is really responsible for the calls.

26. On July 21, 2014 Plaintiff sent Travel Options an email requesting a copy of its DNC policy to customerservice@traveloptions.us.com, which was not returned to Plaintiff as undeliverable or otherwise, but Plaintiff did not receive any policy in response.

27. Travel Options has no DNC policy or procedures as required by the TCPA and FCC rules.

3

28. Travel Options has no written DNC policy available on demand for maintaining a DNC list.

### Further Allegations

29. Defendants' calls used an '*automatic telephone dialing system*' (ATDS) as defined by 47 U.S.C. § 227(a)(1) and 47 C.F.R. § 64.1200(f)(2).

30. Defendants do not clearly identify themselves or the individual callers during the messages initiated as alleged above, and specifically did not provide the name of the individual callers, the names of the person or entity on whose behalf the call is being made, and any telephone number other than that of the autodialer which initiated or placed the call.

31. Defendants' telephone calls to Plaintiff violated the Telephone Consumer Protection Act (TCPA), 47 U.S. Code § 227(b).

32. Defendants' telephone calls to Plaintiff violated the FCC's regulations promulgated pursuant to the TCPA located at 47 C.F.R. § 64.1200.

33. Defendants' violations were done 'willfully' or 'knowingly,' as the term 'willful' at 47 U.S.C. § 312(f) and 47 U.S.C. § 503(b), and as the term 'knowingly' is defined in 47 U.S.C. § 223(b)(1), and as both of these terms are interpreted by the FCC.

34. Defendants made and assisted substantially to the initiation of telephone solicitations to the Plaintiff in violation of the TCPA and FCC regulations, on, but possibly not limited to, the dates listed in this Complaint.

35. Defendants personally and substantially participated to help arrange for the solicitation calls to be initiated and ultimately delivered to Plaintiff's residential line.

36. Defendants made more than one call within a one year period to Plaintiff in violation of the FCC regulations.

37. FCC regulations 47 C.F.R. § 64.1200(d)(4) and 47 C.F.R. § 64.1601(e) were promulgated pursuant to U.S.C. § 227(b)(2).

38. Defendants are all aware and know about, and approve of, the telemarketing calling patterns and practices used in their calling centers and/or used by of their agents or contractors.

39. Defendants all profited by and through the telemarketing calling patterns and practices it or its agents or contractors use and through their conspiracy to call and as part of the Scam.

40. Defendants all ratified the acts and conduct of all person involve in the Scam, including but not limited to employees, agents or contractors calling on their behalf, including any used to call Plaintiff, and profited by the ratification of these acts.

41. Defendants were *telemarketers* engaged in *telemarketing* as defined by the FCC and FTC.
42. Defendants conspired to call Plaintiff and many others in Maryland knowing they would be calling into Maryland.

43. Defendants willfully and knowingly ignore the National DNC list registry.

44. Defendants failed to pay the annual fee for access to telephone numbers within Plaintiff's area code 410 that are included on the National DNC list registry maintained by the FTC.

45. Defendants through their conspiracy to call Plaintiff and others in Maryland had numerous, substantial and continuous contacts with Maryland during their Scam and the calling.

### COUNTS #1-4 : TELEPHONE CONSUMER PROTECTION ACT VIOLATIONS

Plaintiff incorporates all preceding paragraphs as if fully set forth herein, and further alleges that:

### COUNT 1 :  Failure to honor the National Do Not Call (DNC) list registry

46. Defendants' Calls 1-4 all violated the TCPA and FCC regulations at 47 C.F.R. § 64.1200(c)(2), which prohibit telephone solicitations to a number on the National DNC list.

### COUNT 2 : Calling a wireless number with an automatic telephone dialing machine

47. Defendants' Calls 1-4 all violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), and FCC regulations at 47 C.F.R. § 64.1200(a)(1)(iii), which prohibit initiation of any telephone call using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service.

### COUNT 3 : Failure to identify a telemarketer and their telephone number

48. Defendants' Calls 1-4 violated the TCPA and FCC regulations at 47 C.F.R. § 64.1200(d)(4), which requires that *"A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."*

### COUNT 4 :  Failure to transmit full and complete Caller ID information

5

49. Defendants' Calls 1-4 all violated the TCPA and FCC regulations at 47 C.F.R. § 64.1601(e)(i), which requires that "*Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(7) must transmit caller identification information...[and] must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer.*" and also violates the FTC's similar provision at 16 C.F.R. § 310(a)(7).

### MARYLAND TELEPHONE CONSUMER PROTECTION ACT (MD-TCPA)

Plaintiff incorporates the above allegations, and further alleges the following violations of the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-14-3202, which prohibits a person from violating the federal TCPA or the FCC or FTC telemarketing regulations, and which makes each prohibited telephone solicitation and each prohibited practice during a telephone solicitation a separate violation:

### COUNTS #5-8

50. **Count 5**: Defendants' violations in Count #1 above also violate the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-3202.

51. **Count 6**: Defendants' violations in Count #2 above also violate the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-3202.

52. **Count 7**: Defendants' violations in Count #3 above also violate the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-3202.

53. **Count 8**: Defendants' violations in Count #4 above also violate the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-3202.

### Counts #9-24

### Federal Trade Commission (FTC) Telemarketing Sales Rule (TSR) Violations

54. **Counts 9-12:** Defendants' Calls 1-4 violate 16 C.F.R. § 310.4(b)(1)(iii)(B), the FTC

6

regulation which prohibits initiation of *"any outbound telephone call to a person when . . . (B) That person's telephone number is on the "do-not-call" registry,"* and these FTC violations also violate the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

55. **Counts 13-16:** Defendants' Calls 1-4 violate 16 C.F.R. § 310.8(a), the FTC regulation which makes it a violation of the TSR for *"any seller to initiate, or cause any telemarketer to initiate, an outbound telephone call to any person whose telephone number is within a given area code unless such seller, either directly, or through another person, first has paid the annual fee, required by § 310.8(a), for access to telephone numbers within that area code that are included in the National Do Not Call Registry maintained by the Commission,"* and these FTC violations also violate the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

56. **Count 17-20:** Defendants' Calls 1-4 violate 16 C.F.R. § 310.5(d)(1), the FTC regulation which requires that a telemarketer *"disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call . . . (1) The identity of the seller; (2) That the purpose of the call is to sell goods or services; (3) The nature of the goods or services."* and these FTC violations also violate the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

57. **Counts 21-24:** Defendants' Calls 1-4 violate 16 C.F.R. § 310.4(a)(8), the FTC regulation which prohibits *"(8) Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call."* and these violations also violate the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-

3201-02.

## REQUESTED RELIEF

58.   Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

59.   Each failure on a separate occasion by any Defendant or its conspiring partners, employees, agents or contractors to comply with the TCPA or FCC regulations issued for the TCPA constitutes a separate violation of the federal and Maryland TCPA and FTC regulations.

### Federal TCPA Damages

60.   The TCPA, 47 U.S.C. § 227(b)(3) and (c)(5) provides an explicit private right of action for $500 in statutory damages for each violation of the TCPA or an FCC regulation issued under the TCPA pursuant to 47 U.S.C. 227(b).

61.   The TCPA, 47 U.S.C. § 227(b)(3) and(c)(5) explicitly provide for up to triple damages if a Defendant willfully or knowingly violates the TCPA or the FCC regulations.

62.   For each federal violation in each of Calls 1-4, Plaintiff requests $1,500 for each separate violation of the TCPA and/or the FCC's TCPA regulations as alleged in Counts 1 through 4, including triple damages for each willful or knowing violation of the TCPA or FCC regulations by each Defendant.

63.   For the 4 calls, Plaintiff seeks a total of: 4 calls x 4 federal violations per call x $1,500/violation = **$24,000** in federal TCPA statutory damages.

64.   The TCPA, 47 U.S.C. § 227(b)(3)(A) and § 227(c)(5(A) provide for injunctive relief to enjoin violations of the FCC's regulations prescribed under the TCPA.

65.   Plaintiff requests injunctive relief prohibiting the Defendants and all persons under their control from calling Plaintiff and other persons in Maryland in violation of the TCPA.

### Maryland TCPA Damages

8

66. Plaintiff requests $500 for each separate violation of the Maryland TCPA in each of Calls 1-4 as alleged in Counts #5-24, pursuant to Maryland Commercial Law Art. § 14-3202(b)(2), and reasonable attorneys fees as may be applicable.

67. For the 4 calls, Plaintiff seeks a total of: 4 calls x (20 Maryland TCPA violations per call) x $500/violation = 80 violations x $500/violation = **$40,000** in Maryland TCPA statutory damages.

WHEREFORE the Plaintiff seeks from the Defendants jointly and severally $24,000 in federal TCPA and $40,000 in Maryland TCPA statutory damages, for a **grand total of $64,000** damages sought for the telemarketing solicitation violations identified thus far, an injunction prohibiting the Defendants or any persons under their control from calling or assisting with calling any persons in Maryland in violation of the TCPA or FCC regulations, reasonable attorneys fees as may apply, and other such relief as is just and necessary.

### JURY TRIAL DEMAND

The Plaintiff requests a trial by jury for all matters triable by a jury.

Respectfully submitted,

*[signature: Michael C. Worsham]*

Michael C. Worsham, Plaintiff, Pro Se
1916 Cosner Road
Forest Hill, Maryland 21050
410-692-2749

August 26, 2014