**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|   |   |   |
|---|---|---|
| **MICHAEL C. WORSHAM,** | * |   |
| Plaintiff | * |   |
| v. | * | CIVIL NO.  JKB-14-2749 |
| **TRAVEL OPTIONS, INC.,** *et al.*, | * |   |
| Defendants | * |   |

\* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM</u>**

Plaintiff Michael C. Worsham filed this lawsuit against Travel Options, Inc., and Clifford Shannon, alleging violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), codified at 47 U.S.C. § 227, and the Maryland Telephone Consumer Protection Act ("MTCPA"), codified at Md. Code Ann., Com. Law §§ 14-3201 and 14-3202 (LexisNexis 2013).  (Compl., ECF No. 1.)  He asked for total damages of $64,000 and injunctive relief.  Service was made on the two Defendants (ECF No. 6), but neither one appeared or filed an answer.  At Worsham's request, the Clerk entered defaults against both Defendants.  (ECF Nos. 9, 10.)  Now pending before the Court is Worsham's motion for default judgment.  (ECF Nos. 18, 19.)  In his motion, Worsham asks for total statutory damages of $18,000 ($8,000 under the TCPA and $10,000 under the MTCPA) to be awarded jointly and severally against both Defendants and for injunctive relief.[1]  As will be explained below, default judgment will be entered against Travel Options, Inc., only; judgment will be entered for Defendant Shannon.

---

[1] In his motion, Worsham only pursues the statutory compensatory damages and does not seek the enhanced statutory damages for willful or knowing violation of the TCPA or FCC regulations.

*I. Standard for Default Judgment*

The Supreme Court has opined that a default judgment may be lawfully entered only "according to what is proper to be decreed upon the statements of the bill, assumed to be true." *Thomson v. Wooster*, 114 U.S. 104, 113 (1884). "'The defendant, by his default, admits the plaintiff's well pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established. . . . The defendant is not held . . . to admit conclusions of law.'" *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). It is the court's task, therefore, to "determine whether the well-pleaded allegations in [plaintiff's] complaint support the relief sought . . . ." *Ryan*, 253 F.3d at 780. Mere default "does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu*, 515 F.2d at 1206; *see also DirecTV, Inc. v. Pernites*, 200 F. App'x 257, 258 (4th Cir. 2006) (*per curiam*).

The Court surmises that "well-pleaded allegations of fact" sufficient to support a default judgment are equal in quality and character to those factual allegations sufficient for a complaint to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Compare Ryan*, 253 F.3d at 780 ("well-pleaded allegations" in complaint must support relief sought), *with Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Under Rule 8(a)(2), a plaintiff must "show" he is entitled to relief, and that "requires more than labels and conclusions"; "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by

2

mere conclusory statements, do not suffice."). The principle that a court must accept as true all of the complaint's allegations only applies to factual allegations; legal conclusions couched as factual allegations need not be accepted as binding. *Iqbal*, 556 U.S. at 678. Further, a court need not accept "unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).

## II. Allegations of the Complaint

Worsham alleges he resides in Harford County, Maryland, and that he "has continuously subscribed to and used his phone number 410-557-6192, which has been on the National Do Not Call list over 8 years since July 15, 2006, and is a Verizon Wireless cell phone number." (Compl. ¶ 1.) The two Defendants are Travel Options, Inc., which "is a Florida for-profit corporation incorporated in October 2010 with an address" in Boca Raton, Florida, and Clifford Shannon, described by Worsham as "an individual who lives in Florida, and who has been President and registered agent for Travel Options, Inc. at all times relevant to this suit." (*Id.* ¶¶ 2, 3.)

Through the use of "Caller ID," Worsham identified four calls to his number from the same Florida number, 954-656-4091, which were made July 16-18, 2014. (*Id.* ¶ 9.) During the first three calls, no message was left. (*Id.* ¶ 10.) It is reasonable to infer that the first three calls went to an answering machine or to voicemail in Worsham's home, although he does not so state, and that the caller hung up without leaving a message. Worsham says he answered the fourth call and spoke with a man who said he was Jim Allison with Travel Options. (*Id.* ¶ 11.) Allison allegedly told Worsham that he had an unused travel credit of $750 from attending a timeshare presentation in either Florida or Las Vegas in the preceding two to four years, and then Allison offered to sell a travel package to Worsham that would incorporate the unused travel

3

credit. (*Id.*) Allison indicated the travel package had a Florida part, a Las Vegas part, and a cruise, all of which was worth over $4,000, but Worsham's cost after applying the credit would only be $697 if he agreed to participate in a ninety-minute timeshare presentation. (*Id.*) Allison further indicated the travel package was essentially a tax write-off for the timeshare companies "and a way to keep rooms occupied that would otherwise be empty." (*Id.*) Worsham did not attend a timeshare presentation anywhere in the two to four years preceding the telephone conversation. (*Id.* ¶ 13.) Additionally, Worsham has no business relationship of any kind with Defendant, its affiliates, agents, contractors, or partners, and he never gave any prior permission for any of them to call him. (*Id.* ¶ 24.)

Worsham makes many other allegations, but these amount to his conclusions with no supporting factual basis. For example, he alleges Shannon exercised decision-making control over Travel Options's policies, procedures, and business practices and, as well, Shannon made the decisions causing the calls and violations. (*Id.* ¶ 16.) He also alleges the name of the telemarketer is available for transmission via Caller ID by Defendants' carrier. (*Id.* ¶¶ 22, 23.) In addition, Worsham alleges Travel Options has no policy or procedures pertaining to the Do Not Call ("DNC") registry, as required by the TCPA and by rules promulgated by the Federal Communications Commission ("FCC"). (*Id.* ¶ 27.) Also, Worsham alleges "Defendants' calls used an '*automatic telephone dialing system*' (ATDS) as defined by 47 U.S.C. § 227(a)(1) and 47 C.F.R. § 64.1200(f)(2)." (*Id.* ¶ 29.) He further alleges, "Defendants are all aware and know about, and approve of, the telemarketing calling patterns and practices used in their calling centers and/or used by of [*sic*] their agents or contractors" (*id.* ¶ 38), "Defendants all ratified the acts and conduct of all person [*sic*] involve [*sic*] in the Scam . . ." (*id.* ¶ 40), and "Defendants failed to pay the annual fee for access to telephone numbers within Plaintiff's area code 410 that

are included on the National DNC list registry maintained by the FTC" (*id.* ¶ 44). None of these additional allegations rests on facts logically within the knowledge of Worsham, and he provides no supporting factual allegations for them.

Worsham's complaint includes twenty-four counts based on alleged violations of the TCPA, FCC rules, Federal Trade Commission ("FTC") rules, and the MTCPA:

- Count 1:  Each call violated the TCPA's and FCC's prohibition on initiating calls to a telephone number on the DNC list.

- Count 2:  Each call violated the TCPA's and FCC's prohibition on initiating any telephone call using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service.

- Count 3: Each call violated the TCPA's and FCC's requirement to identify the caller, the person or entity on behalf of whom the call is made, and a telephone number or address at which the person or entity may be contacted.

- Count 4:  Each call violated the TCPA's and FCC's requirement to transmit caller identification and to include the calling number and the name of the telemarketer if the name is available by the telemarketer's carrier.

- Count 5:  The TCPA and/or FCC rule violation in Count 1 violated the MTCPA.

- Count 6:  The TCPA and/or FCC rule violation in Count 2 violated the MTCPA.

- Count 7:  The TCPA and/or FCC rule violation in Count 3 violated the MTCPA.

- Count 8:  The TCPA and/or FCC rule violation in Count 4 violated the MTCPA.

- Counts 9 through 12:  The four calls violated the FTC's Telemarketing Sales Rule and, therefore, also violate the MTCPA.

- Counts 13 through 16:  The four calls violated the FTC regulation mandating that a telemarketer pay an annual fee for access to telephone numbers on the DNC list and, therefore, violated the MTCPA.

- Counts 17 through 20:  The four calls violated the FTC regulation requiring that a telemarketer disclose the seller's identity, the call's purpose to sell goods or services, and the nature of the goods or services and, therefore, violated the MTCPA.

- Counts 21 through 24:  The four calls violated the FTC regulation prohibiting a failure to transmit or cause to transmit the telephone number and, when made available by the telemarketer's carrier, the telemarketer's name to any caller identification service used by the call's recipient and, therefore, violated the MTCPA.

### III. *Applicable Law*

The TCPA was passed in response to numerous complaints from both consumers and businesses about telemarketing calls, *i.e.*, telephone calls to market goods and services.  Pub. L. 102-243, § 2.  The Act is codified in section 227, Title 47, United States Code.  The TCPA "was enacted to protect consumer privacy interests" and "seeks primarily to protect subscribers from unrestricted commercial telemarketing calls."  Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68 Fed. Reg. 44,144, 44,150, 44,165 (July 25, 2003).  Relevant to the instant case, subsection *b* prohibits unconsented-to, nonemergency calls using any automatic telephone dialing system or an artificial or prerecorded voice to certain telephone lines, including any telephone number assigned to a cellular service; subsection *c* directed the FCC to promulgate regulations aimed at establishment and operation of a national database of telephone numbers of residential subscribers who object to receiving telephone solicitations and, further, permitted the FCC to prohibit telephone solicitations to any

number in the database; and subsection *d* makes it unlawful, *inter alia*, for anyone to make a telephone call using an automatic telephone dialing system that does not comply with the technical and procedural standards prescribed by the FCC.

The TCPA permits a person to institute a private action based on a violation of subsection *b* and the regulations prescribed under that subsection "to enjoin such violation [and/or] . . . to receive $500 in damages for each such violation," § 227(b)(3); as well, subsection *c* grants a right of private action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [subsection *c*] . . . to enjoin such violation [and/or] . . . to receive up to $500 in damages for each such violation," § 227(c)(5). No private right of action is granted under any other subsection of § 227.

The FCC is charged with the responsibility of prescribing regulations to implement the requirements of the TCPA's various subsections and, accordingly, has promulgated regulations codified at 47 C.F.R. § 64.1200. The FCC has addressed the specific concerns expressed in subsection *b* within § 64.1200(a), and it has addressed those expressed in subsection *c* within § 64.1200(c). What the FCC has prescribed in § 64.1200(b) implements subsection *d* of the TCPA, which mandates regulations for technical and procedural standards for telephone calls initiated by an automatic telephone dialing system or calls using an artificial or prerecorded voice system; likewise, the requirements of § 64.1200(d) set forth the procedural standards for telemarketers to maintain their own, company-specific, do-not-call lists and, consequently, appear to fall under the aegis of subsection *d* of the TCPA.

The regulations published by the FCC as §§ 64.1600 through 64.1605, referred to in Worsham's motion for default judgment, p. 10, are mostly in furtherance of the FCC's duty to

regulate services of telephone carriers, in particular, "to establish federal policies and rules governing calling number identification service (caller ID) on an interstate basis" made necessary by new telephone switching technology that "has fostered new telephone services for both business and residential use." Calling Number Identification, 56 Fed. Reg. 57,300 (Nov. 8, 1991). *See also* Calling Number Identification, 59 Fed. Reg. 18,318 (Apr. 18, 1994) (publishing final rule pertaining to Caller ID services; noting addition of new Subpart P to Part 64 of Title 47, Code of Federal Regulations). In recognition of the role played by Caller ID in helping consumers avoid unwanted calls, and in conjunction with other amendments to its TCPA regulations in § 64.1200 *et seq.*, the FCC specifically amended this set of regulations in 2003 by adding § 64.1601(e), which requires telemarketers to transmit caller identification information, including either calling party number ("CPN") or automatic number identification of the calling party's billing number ("ANI") and, when available by the telemarketer's carrier, the telemarketer's name; this regulation also prohibited telemarketers from blocking the transmission of caller identification information. Rules and Regulations Implementing . . . (TCPA), 68 Fed. Reg. at 44,179. However, it is not clear whether § 64.1601(e) is promulgated under either subsection *b* or subsection *c* of the TCPA. Caller ID technology does not fit neatly into the focus of either subsection, neither of which requires the use of such technology to accomplish their respective purposes. Thus, it is also not clear whether a violation of § 64.1601(e) falls within the private right of action granted by subsection *b* or subsection *c*. It seems just as likely that the FCC may have only intended to ensure consistency between its preexisting Caller ID regulations and its revised TCPA regulations and/or the FTC's regulations pertaining to telemarketing when the FCC promulgated § 64.1601(e); those efforts all occurred at the same time, in 2003. Additionally, the FCC said, "Caller ID requirements will improve the ability of consumers to

identify and enforce do-not-call rights against telemarketers." 68 Fed. Reg. at 44,156. Therefore, the FCC's rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection *c*, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim.

The FTC has enacted its Telemarketing Sales Rule ("TSR") in Title 16, Part 310, of the Code of Federal Regulations pursuant to its responsibilities mandated in 15 U.S.C. § 6102. Telemarketing Sales Rule, 68 Fed. Reg. 4580 (Jan. 29, 2003). Worsham's complaint relies upon § 310.4(a)(8), § 310.4(b)(1)(iii)(B), § 310.4(d)(1),[2] and § 310.8(a). Section 310.4(a)(8) prohibits abusive conduct in telemarketing by the caller's "[f]ailing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call."[3] Section 310.4(b)(1)(iii)(B) prohibits initiation of a telemarketing call to a person when that person's telephone number is on the DNC list. Section 310.4(d)(1) prohibits a telemarketer's failure "to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call . . . [t]he identity of the seller." Last, § 310.8(a) prohibits any seller from initiating or causing a telemarketer to initiate a call "to any person whose telephone number is within a given area code" unless the seller, directly or indirectly, "first has paid the annual fee" for access to numbers within that area code that are included in the DNC list.

Under the MTCPA, a violation of either the Telemarketing and Consumer Fraud and Abuse Prevention Act, as implemented by the FTC's Telemarketing Sales Rule, or the TCPA, as implemented by 47 U.S.C. § 64.1200, is also considered an unfair or deceptive trade practice under Maryland statutory law. Md. Code Ann., Com. Law § 14-3202(a). However, only a

---

[2] Incorrectly cited as § 16.310.5(d)(1) in the complaint.
[3] The Court notes the similarity between this part of the TSR and the FCC's rule in 47 C.F.R. § 64.1601(e), *see supra*.

9

violation of the TCPA that is subject to a private right of action, *i.e.*, one arising under either 47 U.S.C. § 227(b) or (c), is actionable under the MTCPA. *Worsham v. Ehrlich*, 957 A.2d 161, 171-72 (Md. Ct. Spec. App. 2008). *See also Worsham v. Accts. Receivable Mgmt., Inc.*, 497 F. App'x 274, 278 (4th Cir. 2012) (*per curiam*) (agreeing with holding in *Worsham v. Ehrlich* that violation of 47 C.F.R. § 64.1200(b) did not state claim under MTCPA).

## IV.  Analysis

Preliminarily, the Court addresses the issue of vicarious liability, which seems to be the basis for Worsham's suit against Clifford Shannon, the president and registered agent of Defendant Travel Options.  The FCC has ruled that vicarious liability for TCPA violations may exist under federal common-law principles of agency.  *In re DISH Network, LLC*, 28 FCC Rcd. 6574 (2013).  *See also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016) (finding "no cause to question" FCC's ruling on vicarious liability under TCPA).  However, "in the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents." *Meyer v. Holley*, 537 U.S. 280, 286 (2003) (applying tort principle of vicarious liability to violation of Fair Housing Act).  Under general rules of agency law, a corporate officer or director's personal liability "must be 'founded upon specific acts by the individual director or officer.'"  *Roylance v. ALG Real Estate Servs., Inc.*, Case No. 5:14-cv-02445-PSG, 2015 U.S. Dist. LEXIS 44930, at *19 (N.D. Cal. Mar. 16, 2015) (citation omitted), *report and recommendation modified in part on other grounds and adopted as modified by* 2015 U.S. Dist. LEXIS 44933 (N.D. Cal. Apr. 3, 2015).  Thus, "'courts have declined to find personal liability [when] there has been little evidence of the corporate officer's direct participation in the wrongdoing.'"  *Id.* (alteration in original) (citation omitted) (declining to recommend the entry of

default judgment against corporate officer under TCPA because of inadequate factual allegations). Worsham's complaint makes "naked assertion[s]," *see Twombly*, 550 U.S. at 557, regarding Shannon, but those conclusions, couched as factual allegations, are insufficient to nudge the complaint against Shannon "across the line from conceivable to plausible," *id.* at 570. Consequently, the Court will enter judgment for Shannon.

### A. Count 1

In § 64.1200(c), the FCC prohibited the initiation of any telephone solicitation to a residential telephone subscriber who has registered his telephone number on the national DNC registry. Further, in § 64.1200(e), the FCC applied the prohibition in § 64.1200(c) to wireless telephone numbers. As earlier noted, Worsham has alleged that his cellular telephone number has been listed on the DNC registry since 2006, well before the four calls from Travel Options in 2014. In addition, Worsham has made factual allegations regarding the content of the fourth call that clearly lead to the conclusion that the calls were made for telemarketing purposes. Those allegations are sufficient to establish Worsham's entitlement to statutory damages under the TCPA of $500 per call. *See Dores v. One Main Financial*, Civ. No. 1:15-cv-1609-LO-MSN, 2016 U.S. Dist. LEXIS 81913, at *5 (E.D. Va. June 1, 2016) (agreeing with courts holding "that each call made in contravention of the TCPA constitutes an independent violation entitling the plaintiff to statutory damages"), *report and recommendation adopted by* 2016 U.S. Dist. LEXIS 81348 (E.D. Va. June 21, 2016).

### B. Count 2

As it pertains to Worsham's case, the TCPA, in 47 U.S.C. § 227(b)(1)(A)(iii), prohibits any person from making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to

any telephone number assigned to a . . . cellular telephone service." Thus, the elements of this TCPA violation, as alleged in Count 2, are (1) a call (other than one made for emergency purposes or made with the called party's prior express consent), (2) using any automatic telephone dialing system, and (3) to any telephone number assigned to a cellular telephone service.

Worsham's complaint suffices as to the first and third elements; he has provided sufficient factual basis as to the four telephone calls (the first element) and as to his telephone number being assigned to a cellular telephone service (the third element). However, he has not provided "well pleaded factual allegations" as to the second element. He has, instead, made bare, conclusional allegations: the calls were made "using an automatic telephone dialing system (ATDS)" (Compl. ¶ 5); "Defendants used an ATDS to call Plaintiff's number, using a predictive dialer" (*id.* ¶ 6); "Defendants initiated and conspired to initiate at least 4 telephone solicitation calls using an automatic telephone dialing system (ATDS)" (*id.* ¶ 9); and Defendants' calls used an '*automatic telephone dialing system*' (ATDS) as defined by 47 U.S.C. § 227(a)(1) and 47 C.F.R. § 64.1200(f)(2)" (*id.* ¶ 29). These allegations are nothing more than "a formulaic recitation" of the second element of his cause of action in Count 2. "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 686. *See also Dominguez v. Yahoo, Inc.*, 629 F. App'x 369, 373 (3d Cir. 2015) (unpublished) (finding assertion in affidavit that merely restated TCPA's statutory definition of automatic telephone dialing system "nothing more than a legal conclusion couched as a factual assertion"); *Williams v. T-Mobile USA, Inc.*, Case No. 15-cv-03384-JSW, 2015 U.S. Dist. LEXIS 140077, at *4-5 (N.D. Cal. Oct. 14, 2015) (plaintiff's allegations as to ATDS "no

more than legal conclusions couched as fact"). As a result, Worsham has failed to show an entitlement to relief in Count 2.[4]

### C. Count 3

Worsham alleges in Count 3 that the four calls violated 47 C.F.R. § 64.1200(d)(4), which requires a telemarketer "to provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." As the Court earlier observed, § 64.1200(d)(4) is more appropriately viewed as setting procedural standards and, therefore, within the realm of the TCPA's subsection *d*, for which no private right of action exists. The Court has considered the analysis on this point in the case of *Burdge v. Assn. Health Care Mgmt., Inc.*, No. 1:10-CV-00100, 2011 U.S. Dist. LEXIS 9879, at *7-10 (S.D. Ohio Feb. 2, 2011), and has found it persuasive; thus, the Court concludes Worsham does not possess a private right of action as to an alleged violation of 47 C.F.R. § 64.1200(d)(4). *See also Nat'l Fed'n of the Blind v. FTC*, 303 F. Supp. 2d 707, 718 (D. Md. 2004) (noting § 64.1200(d)(4) included in TCPA rules by FCC to ensure that commercial entities, including those outside FTC's jurisdiction, are similarly regulated as to provisions included in FTC's Telemarketing Sales Rule), *aff'd*, 420 F.3d 331 (4th Cir. 2005). *But see Charvat v. NMP, LLC*, 656 F.3d 440, 448 (6th Cir. 2011) (indicating, without analysis, that TCPA's subsection *c* was implemented in 47 C.F.R. § 64.1200(d)); *Drew v. Lexington Consumer Advocacy, LLC*, Case No. 16-cv-00200-

---

[4] One district court ruled the kind of allegations at issue here, which were made in that case "on information and belief," to be sufficient under Rule 8(a)(2). *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 139-40 (E.D.N.Y. 2015). The Court observes that the allegations made in *Twombly* "upon information and belief," which were comparable in alleging the elements of a cause of action, were judged by the Supreme Court to be insufficient under Rule 8(a)(2). 550 U.S. at 551, 564-65. Although "upon information and belief" may still be a legitimate form of pleading, it seems clear after *Twombly* that stating mere conclusions upon information and belief does not pass muster.

LB, 2016 U.S. Dist. LEXIS 52385, at *16 (N.D. Cal. Apr. 18, 2016) (same).  Consequently, Count 3 fails to state a claim for relief.

### D. Count 4

Worsham's next count asserts a violation of the TCPA by a violation of 47 C.F.R. § 64.1601(e)(1), based on a failure to transmit certain information via Caller ID.  He additionally says the conduct of Travel Options violates the FTC's similar provision at 16 C.F.R. § 310(a)(7).  A violation of the latter provision, of course, would not be considered a violation of the TCPA.  Any cognizable violation of § 310(a)(7) would only be remediable, in this case, under the MTCPA; Worsham has made no claim under federal law on this point.  The MTCPA counts are pled later in the complaint.

As previously concluded, an asserted violation of 47 C.F.R. § 64.1601(e)(1) is not properly brought under either the TCPA's subsection *b* or subsection *c*.  Any violation of § 64.1601(e)(1) is a violation of technical and procedural standards under subsection *d*, and as earlier noted, no private right of action exists under the latter subsection of the TCPA.  Count 4, consequently, fails to state a claim for relief.

### E. Count 5

In the next count, Worsham claims the violation of the TCPA in Count 1 is also a violation of the MTCPA.  The conduct at issue, making four calls to a telephone number on the DNC list, constitutes four, separate violations of the TCPA's subsection *b* and, therefore, constitutes four, separate violations of the MTCPA.  As a result, Worsham has established his entitlement to $500 per call in statutory damages.  Md. Code Ann., Com. L. § 14-3202(b)(2)(i), (c).

### F. Count 6

In this count, Worsham seeks MTCPA damages based on the violation of 47 U.S.C. § 227(b)(1)(A)(iii), as asserted in Count 1, for using an automatic telephone dialing system to make the four calls. Having previously found that Worsham has failed to provide well-pleaded allegations of fact in support of Count 1, the Court concludes Count 6 fails to state a claim for relief.

### G. Count 7

Next, Worsham seeks statutory MTCPA damages for the conduct on which Count 3 was based, that is, a violation of 47 C.F.R. § 64.1200(d)(4). The Court previously determined that Count 3 failed to state a claim for relief. For the same reason, Count 7 fails to state a claim for relief.

### H. Count 8

This count under the MTCPA is premised upon the conduct alleged in Count 4 to have been in violation of 47 C.F.R. § 64.1601(e)(1). Because Count 4 was found deficient for the reason that a violation of that regulation may not be asserted in a private right of action, Count 8 is similarly deficient. An additional reason for denying relief on this count is that § 64.1601(e) is in Subpart P of Part 64, and the MTCPA only permits statutory damages for actions claiming violations of Subpart L of Part 64. Md. Code Ann., Com. L. § 14-3201(2).

### I. Count 9 through Count 12

Worsham has pleaded each of the four calls in separate counts as violations of the FTC's TSR rule prohibiting initiation of a telephone call to a person whose telephone number is on the DNC registry. He seeks statutory damages under the MTCPA for each call. His complaint

adequately sets forth a claim for relief in these four counts, and Worsham will be awarded $500 per count.

### J. Count 13 through Count 16

These four counts, seeking damages under the MTCPA, are based upon each of the four calls allegedly violating 16 C.F.R. § 310.8(a), prohibiting a telemarketing call to anyone within a given area code unless the seller has first paid the annual fee for access to the DNC list for that area code. Worsham's allegation that Travel Options did not pay the required annual fee is a bald conclusion with no supporting, well-pleaded factual allegations. Counts 13 through 16 fail to state a claim for relief.

### K. Count 17 through Count 20

Each of these four counts asking for MTCPA statutory damages is premised upon an alleged failure to comply with 16 C.F.R. § 310.4(d)(1), which requires a telemarketer to "disclose truthfully, promptly, and in a clear and conspicuous manner" to the called party three things: the seller's identity; that the call's purpose is to sell goods or services; and the nature of the goods or services. Worsham asserts that each of the four calls violated this regulation—the first three because the caller left no message at all (the Court presumes these calls went to an answering machine or to voicemail) and the fourth for reasons Worsham does not adequately allege. With regard to the first three calls, the FTC has stated that "telemarketers are not required to leave a recorded message on the answering machines of consumers who are not home to answer the telemarketer's call." Telemarketing Sales Rule, 68 Fed. Reg. at 4645. *See also* Rules and Regulations Implementing . . . (TCPA), 68 Fed. Reg. at 44,164 (FCC stating, "Calls that reach voicemail or an answering machine will not be considered 'answered' by the called party."). With that guidance from the relevant agencies, the Court concludes that the caller was

not required to leave any message on Worsham's answering machine or voicemail for the first three calls and, therefore, not in violation of § 310.4(d)(1). As to the fourth call, Worsham alleged the caller identified himself as Jim Allison with Travel Options and then tried to sell a travel package to Worsham. The caller thus complied with § 310.4(d)(1). Worsham has failed to show he is entitled to relief in Counts 17 through 20.

### L. Count 21 through Count 24

Worsham's last four counts, also brought under the MTCPA, allege the four calls violated 16 C.F.R. § 310.4(a)(8) by failing to transmit to Worsham's Caller ID the caller's telephone number "and, when made available by the telemarketer's carrier, the name of the telemarketer." Certainly, Worsham has brought this case because his Caller ID *did* capture the caller's number on each of the four calls; so, the asserted violation based on a failure to transmit the caller's number clearly fails. As to the telemarketer's name, "when made available by the telemarketer's carrier," Worsham has made another bald allegation that the carrier for Travel Options made the caller's name available for Caller ID. Having failed to support Counts 21 through 24 with well-pleaded facts, Worsham's complaint fails to support his claimed entitlement to relief in those counts.

### M. Injunctive Relief

In his complaint's prayer for relief, Worsham requests "an injunction prohibiting the Defendants or any person under their control from calling or assisting with calling any persons in Maryland in violation of the TCPA or FCC regulations." Both subsections *b* and *c* of the TCPA permit the award of injunctive relief "to enjoin such violation" of either subsection *b* or the regulations prescribed under subsection *b* or the regulations prescribed under subsection *c*. Because the authority for awarding injunctive relief in this case is statutory rather than common

law, Worsham "need not plead and prove irreparable injury." *Envtl. Def. Fund, Inc. v. Lamphier*, 714 F.2d 331, 338 (4th Cir. 1983) (applying general rule to violations of 42 U.S.C. § 6901 *et seq.*).

The only "such violation[s]" of the TCPA established by Worsham's complaint are those pertaining to the four calls made to Worsham's number on the DNC list. So, injunctive relief will be awarded against Travel Options to bar any future violations of 47 C.F.R. § 64.1200(c) by it or anyone acting at its behest as to Worsham's numbers on the DNC list. Worsham's request for injunctive relief is aimed at calls by Travel Options to "any persons in Maryland." He has not, however, established an entitlement to serve in a representative capacity for "any persons in Maryland." Thus, the award will only be in regard to telephone numbers placed on the DNC list by Worsham.

## V. Conclusion

Worsham has established his entitlement to $6,000 in statutory damages, broken down as follows: $2,000 ($500 x 4 calls) for Count 1; $2,000 ($500 x 4 calls) for Count 5; and $2,000 ($500 per count) for Counts 9 through 12. A separate order will be entered awarding damages and injunctive relief and closing the case.

DATED this 1st day of September, 2016.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge